UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEFAN WINSTON,<br>　　*Petitioner,*<br>　　*v.*<br>UNITED STATES OF AMERICA,<br>　　*Respondent.* | Civil No. 3:15cv1366 (JBA)<br><br>May 4th, 2016 |

**RULING DENYING PETITIONER'S § 2255 MOTION IN PART
AND ORDERING AN EVIDENTIARY HEARING**

On August 16, 2011, Petitioner Stefan Winston pled guilty to one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin and 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i), and (b)(1)(B)(iii) and 21 U.S.C. § 846. He was sentenced on January 28, 2013 to 165 months imprisonment to be followed by five years supervised release. *See United States v. Winston*, No. 3:11cr1 (JBA) (D. Conn) Minute Entry [Doc. # 690] at 1. He then appealed his sentence to the Second Circuit on the grounds that this Court had not properly considered the factors set forth in 18 U.S.C. § 3553(a), but the judgment was affirmed.[1] *United States v. Winston*, No. 13cv1093 [Doc. # 193] at 5.

Mr. Winston now moves [Doc. # 1] to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 claiming ineffective assistance of counsel at the plea and sentencing stage. For the following reasons, the Court denies Mr. Winston's motion in part

---

[1] Mr. Winston subsequently filed a motion to reduce his sentence to 151 months under Amendment 782 to United States Sentencing Guidelines, which was granted [Doc. # 809] on January 21, 2015.

and orders an evidentiary hearing as to the claim that that his counsel neglected to inform him of the Government's initial plea offer.

I. **Discussion**

Prisoners in federal custody may seek to have their sentences vacated, set aside, or corrected if their "sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Mr. Winston's § 2255 motion alleges ineffective assistance of counsel on two grounds: first, that his defense counsel neglected to inform him of an earlier, more favorable plea offer, which he would have accepted had he known of it; and second, that his defense counsel failed to address "disparities in the sentencing procedure resulting in additional jail time" for Mr. Winston in relation to his co-defendants. (Pet'r's Mem. Supp. [Doc. # 3] at 2.)

A. **Failure to Communicate Earlier Plea Agreement**

A claim of ineffective assistance of counsel at the plea negotiation stage is governed by the two-pronged standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012). Under this standard, a petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "any deficiencies in counsel's performance [were] prejudicial to the defense." *Strickland*, 466 U.S. at 688, 692. To succeed on a claim of prejudice in this context,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the

2

prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012).

Under the Sixth Amendment, defense counsel has an affirmative duty "to communicate the terms of a formal offer to accept a plea on terms and conditions that may result in a lesser sentence, a conviction on lesser charges, or both," and failure to do so provides grounds for an ineffective assistance of counsel claim. *Frye*, 132 S. Ct. at 1405. Petitioner claims that his attorney never communicated the Government's first plea offer, which would have subjected him to a 60-month mandatory minimum sentence on a cocaine charge. Instead, he pled guilty to a cocaine and heroin charge with a 120-month mandatory minimum sentence. In contrast, the Government contends that Mr. Winston was aware of this first plea deal as reflected in the record of the January 28, 2013 sentencing hearing and by then defense counsel Attorney Swaine's sworn statement [Doc. # 9] attesting that to be the case.

### 1. The January 28, 2013 Sentencing Hearing

The Government asserts, based on the following excerpt from the sentencing hearing transcript, that Mr. Winston was aware of the first plea agreement:

> **Mr. Swaine:** And let me go back to the plea agreement initially. When this plea agreement was initially began [sic] to be negotiated with the government, we were approached with a plea agreement that had only one cocaine base in it, and at that point my client had entered into a proffer agreement, I believed we were on the road to cooperation, and quite frankly, and I need to admit it, I went back to the government and said, in terms of just discussing this, you are asking my client to potentially have to testify at trial against co-defendants, members of this gang, the indictment mentions

3

> both heroin and cocaine base, would it put my client—never thinking it was going to fall apart—in a better light if both narcotic substances were mentioned in our plea agreement, which had the effect of putting him up to a mandatory minimum 120 months and starting off at a much higher level.

(Gov't's Opp'n [Doc. # 8] at 15 (citing January 28, 2013 Tr. at 23.)) The Government maintains that this passage "reveals[] counsel for Winston was aware of the initial plea agreement including the terms contained therein." (Gov'n't Opp'n at 15). The Court disagrees. Although counsel states that "*we* were approached with a plea agreement" in this excerpt above, Mr. Winston's *own* knowledge of the first plea agreement is far less clear.

The Government additionally claims that because Mr. Winston never "express[ed] that there was an initial plea agreement that contained a 60 month mandatory sentence . . . [n]or . . . advise[d] the Court that he was unaware of this initial plea agreement," he not only knew of the initial plea agreement but also "believed that . . . [the later agreement] more correctly captured his criminal responsibility." (*Id.*) This argument is unpersuasive for two reasons. First, it assumes that Mr. Winston understood the meaning of his counsel's remarks and that his failure to speak up when his counsel alluded to an initial plea agreement is comparable to a concession that such an offer had in fact been communicated. Second, during the hearing, Mr. Winston insisted that he was not "personally responsible" for dealing or distributing heroin, only cocaine base (which had been the subject of the initial plea deal) (Tr. at 9–10), and thus the record does not support the conclusion that he believed the count to which he ultimately pled "more correctly captured his criminal responsibility." In the Court's view, this passage falls short of conclusively supporting the Government's contention that Mr. Winston was aware of the terms of the first plea offer.

### 2. Defense Counsel's Affidavit

4

The Government additionally points to Mr. Swaine's affidavit as support for its position that Petitioner was aware of the first plea deal and declined it. Mr. Swaine avers that he informed Petitioner of this deal shortly after learning of it, stating that "[i]n or about June 15, 2011, the Government forwarded to me a proposed plea agreement dated June 15, 2011 for consideration of [Mr. Winston]," who was then housed at the Wyatt Detention Center in Rhode Island, and "after reviewing my file I have determined that I travelled to Rhode Island on June 26, 2011" and met with Mr. Winston "for the purpose of reviewing and discussing the proposed plea agreement." (Swaine Aff. [Doc. # 9] ¶¶ 4–6.) Mr. Swaine further claims that he spent "approximately an hour and a quarter at that meeting" and "did cover with Mr. Winston the contents of the proposed plea agreement" and that the "agreement was not entered into by Mr. Winston and subsequently an alternative plea agreement dated August 10, 2011 was prepared and executed by the parties," which ultimately "became part of the cooperation agreement and plea that Mr. Winston entered in anticipation of becoming a cooperating witness for the Government." (*Id.* ¶¶ 6–7.)

Although the detail of Mr. Swaine's statement strongly refutes Mr. Winston's claim that he was not informed of the initial plea offer, the Court concludes that an evidentiary hearing is needed to make credibility determinations about these two discrepant versions of events, precluding a conclusion that the record conclusively shows that Mr. Winston is entitled to no relief. *See* 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.").

"In deciding whether to grant an evidentiary hearing," the Supreme Court has stated that "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Carrasquillo v. LeFevre*, 504 F. Supp. 129, 132 (S.D.N.Y. 1980) ("Where the facts, even if improbable, cannot be said to be incredible; where the allegations, if true, would entitle petitioner to relief; and where there are facts in issue which the record does not clarify, then it would be improper for this court not to hold an evidentiary hearing."). If Mr. Winston were able to prove his claim that an earlier, more favorable plea deal was never communicated to him, he would be entitled to relief if he also demonstrated prejudice, i.e., (1) a reasonable probability that he would have accepted the initial plea deal; (2) the government would not have withdrawn it; (3) the Court would have accepted his plea; and (4) on its face, the offer's terms were less severe than that to which he ultimately pled. *See Lafler*, 132 S.Ct. at 1385. Given that Mr. Winston accepted a plea deal with a substantially higher mandatory minimum, the record at least raises a plausible inference that he was unaware of the initial offer and would have accepted it. *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) ("To warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." (internal quotation marks omitted)).

While a fully developed factual record might also show that Petitioner rejected the initial plea deal in favor of a more onerous plea agreement in the hopes that the Government would use him as a testifying witness and file a 5K1.1 motion, ultimately resulting in a departure without regard to any mandatory minimums, the record before the

6

Court does not conclusively dictate that result and an evidentiary hearing is therefore necessary.

### B. Failure to Object to Sentencing Disparity

Next, Petitioner maintains that his defense counsel failed to meaningfully address disparities in sentencing between him and his co-defendants. However, this claim is belied both by Mr. Swaine's sentencing memorandum and the sentencing transcript in which he discussed the issue of parity extensively. *See United States v. Winston*, No. 3:11cr1 (JBA) (D. Conn) Sentencing Mem. [Doc. # 627] at 8–10 ("Drug Quantity and Parity With Co-Defendants"); Tr. at 22–24 (discussing several comparable co-defendants in terms of conduct and criminal histories); *id.* at 26 ("And so it's for this reason that I think there is a very solid parity argument in this case. There really isn't a decisive difference in terms of the conduct of this group of individuals between my client, the two Williamsons, and Alex Ramos, and my client . . . . So, it's under that argument, your Honor, that we ask you to consider a departure or a non-guideline sentence that would bring him into parity those other defendants.").) Moreover, Mr. Swaine represented Petitioner on his appeal to the Second Circuit[2] where he again raised the issue of parity, but which the Second Circuit rejected. *See United States v. Stefan Winston*, No. 13-1093, Appellant's Br. [Doc. # 193] at 9–13. Mr. Swaine clearly mounted a meaningful argument on the issue of disparities in sentencing between Mr. Winston and his co-defendants and thus Petitioner's § 2255 motion is denied with respect to this claim.

---

[2] Mr. Winston incorrectly states that his appeal was taken by way of an Anders motion. (Pl.'s Mem. Supp. at 1).

II. **Conclusion**

For the foregoing reasons, Mr. Winston's § 2255 motion [Doc. # 1] is DENIED as to his claim that his defense counsel failed to meaningfully address sentencing disparities between him and his co-defendants. However, the Court concludes that an evidentiary hearing is necessary to address the other basis for Petitioner's ineffective assistance of counsel claim, namely, whether his defense counsel failed to communicate the terms of his first plea offer.

               IT IS SO ORDERED.

                /s/
               Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of May 2016.